## LINDSEY v. COUCH.

No. 684, Ind. T.    Opinion Filed September 10, 1908.

(98 Pac. 973.)

1.  **MALICIOUS PROSECUTION—Want of Probable Cause—Evidence.** In an action for malicious prosecution, proof of the fact that a United States commissioner acting as an examining magistrate, after a hearing, had discharged the accused is prima facie evidence of the want of probable cause for instituting the prosecution.

2.  **SAME—Probable Cause—Evidence.** Standing alone, in an action for malicious prosecution, proof of the fact, that after the discharge of the accused by a United States commissioner, acting as an examining magistrate, the grand jury indicted the accused for the same offense is prima facie evidence of probable cause for instituting the prosecution.

3.  **SAME—Want of Probable Cause—Acquittal.** In an action for malicious prosecution, proof of the acquittal of the accused by a jury on trial, on indictment, does not tend to show want of probable cause.

4.  **SAME—Want of Probable Cause—Evidence.** Where a United States commissioner, acting as an examining magistrate, after a hearing discharges the accused, and the grand jury then returns an indictment charging him with the same offense, these two facts, in a suit for malicious prosecution, neutralize each other, and the plaintiff, to sustain his case, must go further and produce other evidence of want of probable cause for instituting the prosecution.

(Syllabus by the Court.)

*Error from the United States Court for the Southern District of the Indian Territory; J. T. Dickerson, Judge.*

Action by Tip Couch against R. P. Lindsey. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Tip Couch, defendent in error, plaintiff below, sued F. R. Lindsey, plaintiff in error, defendent below, in the United States Court for the Indian Territory, Southern District, at Chickasha, for malicious prosecution in three counts, in substance: First.

That on June 10, 1903, defendant falsely, maliciously, and without reasonable or probable cause filed a complaint before a United States commissioner for that district, charging plaintiff with the larceny of a steer, and caused him to issue a warrant for plaintiff's arrest, and wrongfully, unlawfully, and maliciously, and without reasonable or probable cause therefor, caused it to be delivered to the United States marshal, and caused him to arrest and hold plaintiff in custody for several days. For a second cause of action he says that on the same day defendant, by false representation, and for the purpose of injuring and harassing plaintiff, wrongfully, unlawfully, maliciously and without reasonable or probable cause induced one Chris Madsen, a deputy United States marshal, to swear out a complaint before said United States commissioner, charging plaintiff with the theft of a steer, which defendant represented to Madsen was owned by one James Jones and that the same had been stolen by plaintiff, and thereby caused said Madsen to file said complaint before said commissioner, who issued a warrant thereon for plaintiff, and caused said Madsen to arrest plaintiff, and hold him in his custody for several days. For a third cause of action he states, in substance, that on or about June 12, 1903, defendant willfully, maliciously, and without reasonable or probable cause therefor, caused a complaint to be issued against plaintiff, charging him with larceny of another steer, of which defendant claimed to be the owner, and caused said United States commissioner to issue a warrant for his arrest, which was done by Thomas Burke, a deputy marshal of that district, who, pursuant to the commands of said warrant, took plaintiff in his custody, and detained him for four days.

He further says that, by reason of the wrongful and unlawful acts of the defendant aforesaid, he was forced to give bond for his appearance before said United States commissioner, and that on the 18th day of June, and on the 22nd day of June, 1903, said commissioner, after having heard all the testimony produced by defendant, and after making a full investigation of all the facts and circumstances, discharged the plaintiff; that said prosecution

is wholly ended and finally determined, which decision and acquittal has never been appealed or set aside, and files copies of said warrants of arrest; that the United States Commissioner aforesaid had jurisdiction to determine matters and to act as set forth; that by reason of the wrongful and unlawful acts of the defendant aforesaid, all of which he alleges to have been without reasonable or probable cause, he has caused plaintiff great damage to his credit and reputation, and has brought him into public scandal, infamy, and disgrace among his neighbors, and divers other good citizens, and caused him to suffer great pain of body and mind, to his damage $10,000.   He further states that by reason of the facts aforesaid he has been forced to expend $250 attorney's fees, and has been prevented from laboring and transacting his business for 15 days, and that his time was reasonably worth $2.50 a day; that about November 1, 1903, defendant willfully, maliciously and without probable cause, after the institution of this suit, and for the purpose of preparing a defense for same, went before a United States grand jury at Chickasha, and in one of the cases aforesaid procured an indictment against him, thereby causing warrant to issue for him, upon which he was arrested and imprisoned by the United States marshal of that district; that on his trial upon said indictment, after the evidence was all in, the court peremptorily instructed the jury to find him not guilty, and prays judgment for $10,287.50.

On April 18, 1905, defendant filed answer, which was, in effect, a general denial to the first and second causes of action set forth in the complaint, and, after denying generally the allegations set forth in the third cause of action, denies, in substance, that he had anything whatever to do with causing the arrest of the plaintiff complained of; that he instituted or had knowledge of the same, and states that he understood plaintiff was under arrest on a bench warrant in another case, and denies that he was ever arrested or placed in jail under the warrant issued by reason of the complaint filed by defendant on June 12, 1903; that prior to that time defendant had made a full state-

ment of all facts within his knowledge to a reputable and prac-ticing attorney and counselor, who was said acting United States commissioner, and submitted to him all facts within defendant's knowledge, concerning the theft of the steer mentioned in plaintiff's complaint, believing the same to be true and that, acting upon the advice and suggestion of said attorney and United States commissioner, defendant made oath to the complaint made by him on that date as set out in plaintiff's complaint; that he had no knowledge whether the prosecutions therein set forth have been wholly ended and finally determined; denies that he caused plaintiff to be arrested and placed in prison as charged; that he caused injury to his credit or reputation, or brought him into public scandal, infamy, and disgrace, as charged, or that he damaged him in the sum sued for, or in any other amount, and alleges that plaintiff was on the 12th day of June, 1903, and prior thereto, of vicious habits, bad character, and reputation; denies that he forced plaintiff to expend $250 for attorney's fees; that he prevented him from transacting business; that his time was worth $2.50 a day; that on November 1, 1903, he willfully, maliciously, and without probable cause, after the institution of this suit, and for the purpose of preparing defense thereto, appeared before a United States grand jury, at Chickasha, and procured the indictment as charged, or the warrant to be issued, and plaintiff imprisoned as set forth in the complaint, but alleges that he was subpœnaed to appear before said grand jury and give his testimony, and asks that he be discharged with his costs.

There was trial to a jury, which resulted in a verdict and judgment thereon for $1,000 in favor of the plaintiff, and against the defendant, from which he appealed to the United States Court of Appeals in the Indian Territory, and the same is now before us for review.

*Charles M. Fechheimer* and *Frank M. Bailey,* for plaintiff in error.

*Gilbert & Bond,* for defendant in error.

TURNER, J. (after stating the facts as above). As there was no evidence connecting defendant with the prosecution alleged in the first cause of action, and none to connect him with the second cause of action, save that he notified Jones, whom he supposed to be the owner of the steer, that he had bought it from the plaintiff and also notified Jesse Gilmore, inspector for the Cattle Raisers' Association, to the same effect, who caused Madsen, a constable, to swear out the warrant, there is a total lack of evidence in support of either one of these contentions, and the controversy is reduced to the question as to whether or not defendant was guilty of malicious prosecution, as charged in the third count of the complaint.

To maintain the issues raised on the third count on the question of want of probable cause defendant in error, hereafter called plaintiff, introduced in evidence the complaint of the plaintiff in error, hereinafter called defendant, subscribed and sworn to by him before E. M. Payne, United States commissioner, on the 12th day of June, 1903, charging him with the larceny of the steer described in that count, together with a warrant for his arrest on the same date, together with a subpœna issued by the commissioner on the next day for the witnesses for the government, including the defendant, together with a bond for plaintiff's appearance before said commissioner on the 18th of June, 1903, together with the docket entries of the commissioner, showing that he entered a plea of not guilty, and was discharged by the commissioner on June 22, 1903, after he had heard all the testimony introduced, for the reason that he had no sufficient probable cause to hold the plaintiff to await the action of the grand jury. Plaintiff also introduced in evidence, presumably, on the issue of malice, an indictment returned against him for the same offense, for which he had been discharged before the commissioner about the 1st day of November, 1903. There was no evidence introduced by defendant upon the issue of probable cause.

Upon this state of facts, which, besides being matters of record, stands undisputed, and being all of the evidence introduced

by either plaintiff or defendant upon the issue of probable cause, the court upon this issue instructed the jury as .follows:

"You are instructed that, where a man is arrested and discharged by an examining officer for want of probable cause, that would constitute a *prima facie* case of the want of probable cause for your consideration. But it is only to be considered such when taken together with all other evidence in this particular case. The evidence in this case shows, gentlemen of the jury, that in the first place the defendant in this case had the plaintiff arrested before an examining officer, Judge Payne, and in that examination he was discharged for want of probable cause for holding him. The evidence further discloses the fact that the grand jury indicted the plaintiff again upon the same case, and that he was afterwards charged with the same crime by the grand jury, and that he was afterwards tried and discharged under instruction of the court for this particular crime. You are instructed, gentlemen of the jury, that, if you believe from the evidence that the defendant in this case having all the evidence before him at the time of the original complaint, which was filed in the commissioner's court, presented the same to the commissioner, and that he was afterwards summoned before the grand jury, and the grand jury found a true bill against the plaintiff upon the same evidence, and that he was discharged by the court upon that evidence, you are authorized to find from the evidence that there was want of probable cause in the arrest of the plaintiff."

Was this instruction error, as contended by defendant? We think it was. The instruction, in effect, told the jury that the discharge of the defendant by the examining magistrate was *prima facie* evidence of want of probable cause, and that the subsequent finding of an indictment by the grand jury for the same offense, and his acquittal, aided that presumption, and with it constituted proof of want of probable cause.

Let us analyze this charge and see if it correctly states the law. It is undoubtedly true, as announced in the first sentence of. this charge, that where one is arrested and discharged by the examining magistrate, the fact is *prima facie* evidence of want of probable cause in a subsequent action of this kind. 19 Ency. of Law, 664, says:

"The weight of authority is believed to favor the rule that the discharge of the plaintiff in malicious prosecution by the examining magistrate is *prima facie* evidence of the want of probable cause for the proceedings complained of"— citing authorities.

But the instruction goes further and tells the jury that the subsequent indictment and acquittal of plaintiff, upon the same charge for which he was discharged before the magistrate, aided the presumption of want of probable cause arising from such discharge, and together were proof of want of probable cause. In this we think the court erred. The subsequent indictment of plaintiff, standing alone, was *prima facie* evidence of probable cause, and, taken with the conflicting presumption of want of probable cause arising from his discharge by the magistrate, in no way aided that presumption, but we are of the opinion had a directly contrary result, and militated against that presumption to such an extent as to destroy it. Especially is this true since the evidence fails to disclose that the indictment was found by the procurement of defendant, and it is not questioned that it was found upon the same evidence as was adduced before the magistrate. Plaintiff's subsequent acquittal was no evidence at all bearing on the issue of probable cause, and did not affect it one way or the other.

Let us discuss each of these propositions: 19 Ency. of Law, 663, states the rule thus:

"It has been held that the finding of an indictment by the grand jury is *prima facie* evidence of probable cause for the prosecution, unless the jury believes that the indictment was procured by the false testimony of the defendant, or by other improper means"—citing authorities.

This doctrine has also been firmly established by the great weight of authority. In *Jones v. Railroad*, 131 N. C. 133, 42 S. E. 559, the court says:

"In *Griffis v. Sellars*, 19 N. C. 492, 31 Am. Dec. 422, this court, speaking through Chief Justice Ruffin, says: 'It is settled in this state that a discharge by the examining magistrate imports that the accusation was groundless. If the magistrate commit, or

if the grand jury find a bill, it has never been doubted that in law that is evidence of probable cause, and calls for an answer from the plaintiff as to the particular circumstances, which impose it on the plaintiff to go into the circumstances in the first instance. It is true that in these cases the evidence is deemed *prima facie* only."

In *Peck v. Chouteau,* 91 Mo. 138, 3. S. W. 577, 60 Am. Rep. 236, the court says:

"Objection is also made to the instruction which, in substance, is that the findings and return of the indictment is *prima facie* evidence of probable cause, and unless this proof is overcome by evidence, either that the indictment was procured by false or fraudulent testimony or that, notwithstanding the finding of said indictment, said defendant did not believe the plaintiff to be guilty of the offense for which he had been indicted, the jury will find for the said defendant on the first count. This instruction has the sanction of at least two former rulings of this court. *Sharpe v. Johnston,* 76 Mo. 670; *Van Sickle v. Brown,* 68 Mo. 627. The statement that the finding and return of the indictment is *prima facie* evidence of the probable cause is no more than that the burden of proof to show want of probable cause is upon the plaintiff."

In *Sharpe v. Johnston,* 76 Mo. 660, the court said:

"It may be further observed that the action of a grand jury in finding a bill of indictment, or the commitment of the prisoner by the examining magistrate, is *prima facie* evidence of probable cause"—citing *Sharpe v. Johnston,* 59 Mo. 557; *Van Sickle v. Brown,* 68 Mo. 627; *State v. Railey,* 35 Mo. 168; *Brant v. Higgins,* 10 Mo. 728; *Graham v. Noble,* 13 Serg. & R. (Pa.) 233; *Bacon v. Towne,* 4 Cush. (Mass.) 217.

In *Brown v. Griffin,* Cheves (S. C.) 32, the court said:

"Where the grand jury have returned a true bill upon the charge made, such finding amounts to a judicial recognition that probable cause does exist. Hence arises a rule that a plaintiff, suing for damages in such a case, must prove the absence of probable cause; and, if he fails to do so, such judicial recognition is *prima facie* proof of a probable cause."

It is useless to multiply authorities upon so well-established

a doctrine, but we cite in addition *Firer v. Lowery.* 59 Mo. App. 92, and *Barber v. Scott,* 92 Iowa, 52, 60 N. W. 497.

But the court further says, in effect, that if plaintiff was acquitted of the charge in the indictment, that fact, coupled with his discharge before a committing magistrate and his subsequent indictment for the same offense, would furnish proof of a want of probable cause. This latter part of the charge is wholly erroneous, and was no evidence whatever of a want of probable cause, and, being no evidence whatever bearing upon that issue, would add nothing to the presumption of want of probable cause arising from the fact of plaintiff's discharge before the examining magistrate, or to the presumption of probable cause arising from the finding of the indictment. 26 Cyc. 40, lays down the rule thus:

"An acquittal is merely one of the essentials of plaintiff's case, usually sheds no light on other facts, and of itself, does not show want of probable cause"—citing authorities.

19 Am. & Eng. Ency. of Law, 665, states it thus:

"Some cases seem merely to hold that the acquittal in a criminal prosecution of the plaintiff in the subsequent suit for damages is not alone *prima facie* or *per se* sufficient evidence of want of probable cause. But the better doctrine is believed to be that such fact is no evidence whatever of a lack of probable cause for the prosecution, and is not admissible in such connection.   *   *   *" citing authorities.

In *Boeger v. Langenberg,* 97 Mo. 390, 11 S. W. 223, 10 Am. St. Rep. 322, the court said:

"Regarding the third count, the plaintiff showed an acquittal by jury on an information brought by the prosecuting attorney, at defendant's instance, against plaintiff. It is claimed that the acquittal tends to establish want of probable cause in moving that prosecution. This contention is so clearly contrary to the precedents that we dispose of it by merely referring to them, citing *Williams v. Van Meter,* 8 Mo. 339, 41 Am. Dec. 644, Townshend on Slander, 709, and cases cited, and 2 Greenleaf on Ev. § 455."

In *Bekkeland v. Lyons,* 96 Tex. 255, 72 S. W. 56, 64 L. R. A. 474, the court said:

"We recognize, as does the Court of Appeals, the conflict of

authority upon the question, but we are of the opinion that the weight of authority and the better reason are in favor of the proposition that in such a case the acquittal of the plaintiff of the criminal charge is not evidence tending to show want of probable cause. We cite some of the recent cases: *Stewart v. Sonneborn,* 98 U. S. 187, 25 L. Ed. 116; *Allen v Codman,* 139 Mass. 139, 29 N. E. 537; *Willard v. Holmes.* 142 N. Y. 493, 37 N. E. 480; *Eastman v. Monastes,* 32 Or. 291, 51 Pac. 1095, 67 Am. St. Rep. 531. See, also, note to *Ross v. Hixon,* 26 Am. St. Rep. 155."

In *Cloon v. Gerry,* 13 Gray (Mass.) 201, Mr. Justice Shaw, speaking for the court, said:

"In every case of an action for malicious prosecution or suit, it must be averred and proved that the proceeding instituted against the plaintiff has failed, but its failure has never been held to be evidence of either malice or want of probable cause, much less is it conclusive of those things."

Thus it will be seen that the court instructed the jury that two presumptions, the one arising from plaintiff's discharge by the examining magistrate, and the other from his subsequent indictment for the same offense, aided each other, and together made evidence of want of probable cause. In so charging we think the court fell into error, and that, instead of the two presumptions aiding each other, we repeat that we are af the opinion that they had the directly opposite effect, and militated to the extent of destroying each other. And why should they not? In order to maintain this action it was incumbent on the plaintiff to prove want of probable cause; that is, that the prosecution of which he complains was not based upon such facts and circumstances, known to defendant at the time sufficient in themselves to lead him, as a reasonable and cautious man, to believe the plaintiff probably guilty of the crime charged, but was actuated by malice or some improper or sinister motive. *Stewart v. Sonneborn,* 98 U. S. 187, 25 L. Ed. 116. This he undertook to do, not by going into the facts and circumstances known to defendant at the time, and which actuated him in waging the prosecution, but by introducing a record, in effect, that the examining magistrate had already determined that fact in his favor, which determination he relied upon as

sufficient proof in this case, until overcome by competent and satisfactory evidence. At the same time he introduced as proof of malice an indictment, found presumably at the next sitting of the grand jury in that jurisdiction, charging him with the same offense for which he had been discharged by the examining magistrate, showing conclusively to our minds that the magistrate took one view of the probable guilt of defendant, and the grand jury another; that one man thought there was want of probable cause for the prosecution and twelve men were of the opinion that probable cause therefor existed, and the finding of each was attended with that presumption. It comes irresistibly to our minds that, as the burden of proof on this issue was upon the plaintiff, to sustain which he introduced in evidence testimony, from which arose two conflicting presumptions, those presumptions counterbalanced each other, and there was nothing proved on the issue of probable cause, and the court should have so instructed the jury.

We are not without authority to support this conclusion. Cases of conflicting presumptions, both in civil and criminal cases, are not unusual. *Lowery v. People,* 172 Ill. 466. 50 N. E. 165, 64 Am. St. Rep. 50, was a prosecution for bigamy. At the trial the second marriage was conclusively proven, and not controverted, and that defendant resided with her, in the state of Illinois, as his wife for about a year. The evidence as to the first marriage consisted of testimony that defendant and the alleged first wife lived together as husband and wife in Chicago previous to the second marriage, and while so living together he called her his wife, and said they had been married in Milwaukee, and showed what purported to be a marriage certificate. Defendant was convicted, and on appeal the court, in reversing the case, said:

"Where the relation of husband and wife is assumed, the law generally presumes in favor of a lawful marriage, but where it is charged that two successive marriages have taken place the presumption in favor of the legality of each is equal, and actual marriage must be proved. In this case, the presumption that would ordinarily obtain in favor of the first marriage is met by an equal presumption in favor of the legality of the second marriage, and

therefore it was incumbent on the prosecution to show the first marriage to be a marriage in fact."

Again, in *Squire v. State,* 46 Ind. 459, the court, in speaking through Mr. Justice Buskirk, quotes approvingly from Bishop in his work on Statutory Crimes, in section 611, p. 403, where he says, speaking of presumptions arising in prosecutions for bigamy, in substance, that in cases where seven years have not elapsed at the time of the trial, the presumption of death of the absent spouse did not obtain, and that the presumption of innocence of the accused taken with that presumption neutralized each other.

*Foster v. Berry,* 14 R. I. 601, was an action in assumpsit to recover $100 paid by plaintiff to defendant for certain real estate, purporting to be sold and conveyed to plaintiff by defendant as sheriff, under an execution, plaintiff claiming that the sheriff conveyed him no title, because he had failed to properly advertise the sale. The court said:

"The plaintiff points out certain defects and omissions in the return, chief among which is an omission to show that the execution sale was duly advertised in some newspaper in the county, and he contends that, in consequence thereof, his title is invalid. The burden of proof, however, is on the plaintiff and it does not follow that the sale was not advertised, because the return fails to show it. The return does not purport on its face to be a statement of everything that was done in the service of the execution, and we do not find any language in it which implies that the sale was not advertised. It may be argued that the presumption is that everything that was done appears in the return, because the officer is directed to return the writ with his doings thereon. But it may likewise be argued that the presumption is that the defendant did not sell before advertising the sale, because the statute makes it his duty to advertise before selling. Both presumptions are equally strong and therefore all we can say is that the return does not show whether the sale was duly advertised or not. Consequently it was for the plaintiff to show the omission to advertise by extrinsic evidence, and he adduced no such evidence."

*Sarah H. Yarnell v. Kansas City, Ft. Smith & Memphis R. R.,* 113 Mo. 570, 21 S. W. 1, 18 L. R. A. 599, was an action

for damages for the death of plaintiff's husband, alleged to have been caused by the negligence of the defendant railroad company. Speaking of conflicting presumptions, the court said:

"This record is utterly barren of any testimony showing, or tending to show, how or in what way Yarnell came to his unfortunate death. His locality at the time his daughter and Wall left him on entering the cars, whether he was on the bottom step of the car, or on the car platform, or on the depot platform, is entirely unknown; and it is equally unascertained and unascertainable whether his death resulted from an attempt to alight from the cars while in motion, and he was thus thrown beneath them and killed, or whether, having alighted, he ventured too close to the cars and was struck by them as they started, and hurled to his death. It has been suggested that it will be presumed that Yarnell was in the exercise of 'due care.' This may be granted; but, while indulging this presumption, it must not be forgotten that every one is presumed to properly acquit himself of his engagements and his duty (*Lenox v. Harrison,* 88 Mo. 491, and cases cited), and that carriers of passengers are by no means outside of the pale of this favorable presumption. So that the result is that one presumption rebuts and neutralizes the other, like the conjunction of an acid and alkali."

*Miller v. Chicago & C. Ry. Co.* (C. C.) 41 Fed. 898, was a case where plaintiff had been arrested by defendant for burning its depot, and, after being held by the examining magistrate to answer to the grand jury, a bill by it was ignored. He then sued defendant for malicious prosecution. On a demurrer to the evidence, in considering the two conflicting presumptions thus arising, the court held, as we have done in this case—that is, that they destroyed each other, and the burden of proof being on the plaintiff, it devolved on him to proceed further with his proof on this issue—the court, speaking through Mr. Justice Philips, said:

"So we may say  *  *  *  that the plaintiff has not made out a *prima facie* case here by showing that the bill was ignored by the grand jury, in view of the fact of the precedent action of the committing magistrate in finding that there was probable cause. In other words, that those two *prima facie* inferences counter-

balance each other. Then it devolved upon the plaintiff to go further, and show, not only that this charge was false in fact, but that at the time it was instituted by the prosecutor there was no reasonable ground to suppose that the defendant was guilty."

Hence, we are of the opinion that the court erred in so instructing the jury, and also in refusing to give the following instruction asked for the defendant:

"You are instructed that the fact of the finding of an indictment by the grand jury, upon the same charge on which the defendant filed a complaint against the plaintiff neutralizes the effect of the discharge by the United States commissioner and that the fact of his discharge by the United States commissioner cannot be taken by this jury to be *prima facie* evidence of a want of probable cause."

It follows that the judgment of the lower court should be reversed, and the case remanded for new trial, and it is so ordered.

All the Justices concur.